**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PRESQUE ISLE COLON AND RECTAL SURGERY, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HIGHMARK HEALTH,<br><br>-and-<br><br>HIGHMARK INC. f/k/a HIGHMARK HEALTH SERVICES,<br><br>-and-<br><br>HIGHMARK CHOICE COMPANY f/k/a KEYSTONE HEALTH PLAN WEST, INC.,<br><br>Defendants. | Civil Action No.: 1:17-cv-00122-BR |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiff Presque Isle Colon and Rectal Surgery, by and through undersigned counsel, respectively moves for Preliminary Approval of the proposed Settlement Agreement attached hereto as Exhibit A (the "Settlement Agreement"), and certification of the Settlement Class, which will resolve the claims of Plaintiff and all proposed class members ("Settlement Class Members") against Defendants in this action. Defendants Highmark Health, Highmark Inc. f/k/a Highmark Health Services, and Highmark Choice Company f/k/a Keystone Health Plan West, Inc. (collectively, "Defendants" or "Highmark") do not oppose this motion.

Plaintiff submits that the Court should grant preliminary approval because the proposed settlement provides substantial relief for the Settlement Class and its terms are fair, adequate, and reasonable. Under the Settlement Agreement, Highmark will reimburse each Settlement Class Member a pro rata share of the Affordable Care Act exchange product reimbursement rates

experienced by the Class. This payment is automatic (absent opt-out) and not revertible to Highmark. Highmark also has agreed to a slate of non-monetary relief concerning, among other things, the information made available to independent physicians; the number or timing of across-the-board reimbursement rate cuts Highmark may institute; the period for which Highmark may seek overpayment recoveries; and the ability of independent providers to exclude themselves from participating in certain Highmark products. As set forth in further detail herein, the Settlement meets the standard for preliminary approval. Thus, Plaintiff moves the Court to enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement submitted herewith. The order contemplates: (1) preliminary approval of the Settlement's terms; (2) certification of the Settlement Class, for settlement purposes only; (3) appointment of Plaintiff as the class representative; (4) appointment of Golomb & Honik, P.C., as Class Counsel; (5) appointment of RSM US LLP as the Settlement Administrator; (6) approval of the form, method, and plan of Class Notice; (6) the entry of procedures and deadlines for Settlement Class Members to object or to exclude themselves from the Settlement; and (7) scheduling a Final Fairness Hearing.

## II. BACKGROUND

### A. Case Overview

Per the Amended Complaint, Plaintiff Presque Isle Colon and Rectal Surgery provides outpatient physician services (the sub-specialty of outpatient colorectal physician services) in the Erie County Metropolitan Statistical Area ("Erie County MSA"). Am. Compl. ¶ 14.[1] The Amended Complaint also alleged the following facts. Highmark is one of the largest health insurers in the Commonwealth of Pennsylvania, with more than 4 million covered lives. *See* Am. Compl. ¶¶ 2, 42. Highmark is the dominant health insurer in the Erie County MSA and Western

---

[1] This Case Overview section describes factual allegations in the Amended Complaint. Highmark does not admit these allegations for purposes of this motion or otherwise.

Pennsylvania (as Highmark defines this area). *Id.* ¶ 2. Highmark also controls commensurate shares of reimbursements to independent physicians in the Erie County MSA and Western Pennsylvania. *Id.* Also, Highmark now provides outpatient services itself in these same markets. *Id.* ¶ 4. Highmark has acquired St. Vincent Hospital in the Erie County MSA, and other healthcare facilities throughout Western Pennsylvania. *Id.* Thus, Highmark directly competes with independent providers for the provision of outpatient physician services. *Id.*

The Amended Complaint alleged that Highmark engaged in anticompetitive conduct aimed at independent physicians by leveraging its position as the largest health insurer and buyer of outpatient physician services. *Id.* ¶¶ 5-8, 11-12, 44-47, 58. Among the anticompetitive conduct alleged was that (i) Highmark has predatorily depressed its reimbursement rates for outpatient physician services rendered by independent physicians in the Erie County MSA and Western Pennsylvania, including rates below cost and across-the-board reimbursement rate reductions under Highmark's Affordable Care Act exchange products; (ii) audits to clawback money Highmark had paid three or more years ago; (iii) erecting administrative impediments to independent physicians' efficiency, and (iv) steering patients away from independent providers. *Id.* ¶ 11-12, 47, 49-50, 52-53. Independent providers could not avoid Highmark's conduct because an "all products" clause in Highmark's provider agreements requires independent providers to accept all of Highmark's health insurance plans and rates, or none at all. *Id.* ¶¶ 59-62.

**B. Settlement Negotiations**

In August 2017, the parties jointly engaged an experienced mediator and approved ADR Neutral of this District, Mr. E.J. Strassburger. *See* Decl. of David J. Stanoch, Esq. ("Stanoch Decl.") ¶ 4 (Ex. B hereto). The mediation process was non-collusive and conducted at arms' length between the parties with divergent views as to the risks of litigation. Highmark supplied Plaintiff's counsel with certain information pertinent to the case. The parties also provided Mr. Strassburger

with case materials and information. *Id.* ¶ 5. The parties also had multiple joint and *ex parte* telephone conversations with Mr. Strassburger. *Id.* An all-day, in-person mediation session before Mr. Strassburger took place on September 26, 2017. *Id.* ¶ 6. This in-person mediation session, and follow-up conversations between the parties or Mr. Strassburger, informed the parties' understanding of their respective positions, but did not result in a settlement at that time. *Id.* ¶ 6.

Following the Court's ruling on Highmark's motion to dismiss the Amended Complaint, the parties resumed direct mediation discussions between themselves. *Id.* ¶ 7. After much back and forth, and following the review of further information supplied by Highmark, the parties were able to reach a settlement in principle on September 19, 2019. *Id.* ¶ 7. The parties promptly informed the Court. This Court granted a stay so the parties could finalize the settlement papers. The parties executed the Settlement Agreement on October 31, 2019, subject to Preliminary Approval and Final Approval as required by Federal Rule of Civil Procedure 23.

## III. SUMMARY OF PROPOSED SETTLEMENT TERMS

### A. The Settlement Class

The Settlement Class is comprised of all independent physicians or independent physician practices in Highmark's 29-county Western Pennsylvania service area through December 31, 2018. See Agreement ¶ 1.25. The parties estimate there are more than 3,000 class members.

### B. Monetary Relief

The Settlement Agreement provides that Highmark will create a non-revertible settlement fund of $1,725,000. *See* Agreement ¶¶ 1.26, 7.1. From this amount, each Settlement Class Member will be entitled to receive a settlement payment reflecting their pro rata share based on a reasonable estimate of total reimbursements under Highmark's Affordable Care Act exchange products for calendar years through December 31, 2018, as adjusted for valid opt-outs. *Id.* ¶ 7.1.2. Settlement Class Members are automatically considered participants and automatically will

receive a settlement payment unless they opt-out or object. *Id.* ¶ 7.1.4. This procedure greatly reduces the administrative burden to Settlement Class Members who wish to participate.

**C. Non-Monetary Relief**

In addition to the monetary relief described above, the Settlement Agreement provides that Highmark, for a three-year period running from the end of the calendar year in which the Court enters a Final Approval Order, will: (i) make fee schedules for commonly used procedures available; (ii) provide 90 days' notice of any changes to Highmark's contracts, policies, or procedures; (iii) institute policies or procedures to ensure that Highmark employees or agents do not knowingly provide misinformation to consumers/patients about independent providers; (iv) use a two-year look-back period for overpayment recoveries; (v) not make more than one across-the-board fee schedule reduction per year as to services provided to patients covered under Highmark products (as further delineated in the Settlement Agreement); (vi) provide, in 2020, a one-time opt out of current products that utilize a reduced fee schedule and the ability after 2020 to not participate in subsequent newly introduced products that utilize a reduced fee schedule (as further delineated in the Settlement Agreement); and (vii) continue to offer processes that enable a provider to bring reimbursement concerns to the attention of a responsible representative. *See* Settlement Agreement ¶ 8. Defendants will also provide a direct point of contact on rate inquiries, and Defendants will consider concerns about below cost rates in good faith. *Id.*

**D. Class Release**

As consideration for the monetary relief under the Settlement Agreement, Highmark will receive a Release from each Settlement Class Member as more specifically delineated in the Settlement Agreement with respect to any claim that was alleged or could have been alleged in the Amended Complaint, relating to the conduct alleged therein. *See* Agreement ¶ 1.19.

### E. Notice and Settlement Administration

Highmark will pay up to $50,000 for notice and settlement administration costs. *See* Agreement ¶ 9.2. This is an added benefit to the class as this amount will be paid separately from the monetary relief discussed above. *Id.* RSM US LLP will be the notice and claims administrator for the Settlement. The Class Notice is consistent with others RSM US LLP has administrated in the past, so as to provide the best notice practicable, tailored to reach members of the Settlement Class and to reasonably apprise them of their rights under the Settlement Agreement. *See id.* ¶ 6.

The Class Notice will be sent via email to all Settlement Class Members, based on Highmark's records. *Id.* ¶ 4.2.3. In the event an undeliverable email, notice shall be delivered via first-class U.S. mail, postage pre-paid. *Id.* ¶ 4.2.4. RSM US LLP will initiate an address search for any Class Member for whom Highmark does not have a mailing address, or if initial mail notice is returned as undeliverable. *Id.* Additionally, RSM US LLP will create and maintain a settlement website containing pertinent information for Settlement Class Members. *Id.* ¶ 4.2.5.

Requests to opt-out of the Settlement are to be sent to the Settlement Administrator within the prescribed timeline. *Id.* ¶ 5.1.2. Objections must be filed with the Court, with copies of the objections sent to the parties' counsel. *Id.* ¶ 5.4. The deadlines for objections, requests for exclusion, and claims are all before the contemplated Final Fairness Hearing.

### F. Service Award, Attorneys' Fees, and Costs

Highmark will not oppose Class Counsel's request for a service award of up to $10,000 for Plaintiff's time and effort in this matter. *See* Settlement ¶ 7.1.1. Highmark also will not oppose Class Counsel's request for attorneys' fees of up to 30% of the settlement fund, plus costs. *Id.*

## IV. THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure provides for judicial approval of the compromise of claims brought on a class basis if the proposed class action settlement is "fair,

reasonable, and adequate." Approval of class action settlements is committed to the sound discretion of the district court. *See* Fed. R. Civ. P. 23(e). In exercising its discretion, district courts are mindful of the strong judicial policy favoring settlements. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

At the preliminary approval stage, "the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." *Mack Trucks, Inc. v. Int'l Union*, UAW, Civ. A. No. 07-3737, 2011 U.S. Dist. LEXIS 51514, at *7 (E.D. Pa. May 12, 2011) (internal quotations and citation omitted). Rather, a court should determine whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies[.]" *Id.* (internal quotations and citations omitted). A district court's evaluation of a request to preliminarily approve a class action settlement focuses on whether the proposed settlement is the result of the parties' good-faith negotiations, whether there was any discovery, if experienced counsel negotiated and support the settlement, and if the settlement is within the range of reasonableness. *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Glaberson v. Comcast Corp.*, Civ. A. No. 03-6604, 2014 U.S. Dist. LEXIS 172040, at *14 (E.D. Pa. Dec. 12, 2014). Each of these considerations warrants preliminary approval of the settlement.

**A. The Settlement Was The Result of Arm's Length, Informed Negotiations**

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002); *see, e.g., Glaberson*, 2014 U.S. Dist. LEXIS at *14 ("Preliminary approval analysis often focuses on whether the settlement is the product of arms-length negotiations.") (internal quotations and citation omitted).

Here, the parties engaged in arm's length negotiations. *See, e.g.,* Stanoch Decl. ¶¶ 8. The parties engaged the services of an experienced mediator, Mr. Strassburger, with whom the parties

had multiple joint and *ex parte* telephonic conferences. *Id.* ¶5. The parties also provided Mr. Strassburger with case materials and information. *Id.* The parties' all-day, in-person mediation session occurred after Highmark had provided information about the fees at issue and the scope and nature of the putative class. *Id.* ¶6. Although the parties' discussions with Mr. Strassburger did not culminate in an agreement in principle at that time, it provided the baseline for when parties subsequently resumed settlement discussions directly. *Id.* ¶ 7. Between the information provided by Highmark and Mr. Strassburger's initial assistance, the parties and their counsel had an informed view of the strengths and weaknesses of their respective positions, the risks of continued litigation, and an appreciation for the substantial value this settlement delivers to the Settlement Class when evaluated in this context. *See id.* ¶ 9.

**B. There Was Discovery**

As noted above, Highmark provided information to Plaintiff with information relating to the scope of the putative class, the nature and scope of the reimbursement rate cuts implemented as to Highmark's Affordable Care Act health exchange products, and the other conduct challenged in the Amended Complaint. *Id.* ¶¶ 5, 9.

**C. Counsel Are Experienced In Similar Litigation**

Both sides' counsel are qualified and competent class action litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Plaintiff's Class Counsel has successfully handled national, regional, and statewide class actions, as well as other complex mass or multi-party actions, throughout the United States in both federal and state courts. *See* Stanoch Decl. ¶¶ 18-19.

**D. The Settlement Is Within the Range of Reasonableness**

In preliminarily assessing whether a settlement falls within the range of reasonableness, courts examine the potential relief to the class. *See, e.g.*, *Mack Trucks*, 201 U.S. Dist. LEXIS at *8. Here, the Settlement provides for payment to each eligible Settlement Class Member from a $1,725,000 non-revertible settlement fund. *See, e.g.*, Agreement ¶ 15. Based on data provided by Highmark, the sum represents a very significant percentage of the total reimbursement rate cuts that Settlement Class Members experienced in 2016-18. That is, the fund represents a very large share of amounts Settlement Class Members did not receive because of Highmark's Affordable Care Act health exchange product rate cuts that are challenged in the Amended Complaint.

In addition, incident to the monetary relief is a bevy of non-monetary relief that will directly inure to the benefit of the Settlement Class. The various practice or conduct changes Highmark agreed to in the Settlement Agreement track each particular practice challenged in the Amended Complaint, including but not limited to the ability of independent providers to "opt out" of certain Highmark products; how far back Highmark may attempt to clawback alleged overpayments; to Highmark's instituting policies or procedures to ensure Highmark personnel do not knowingly provide misinformation to patients about independent providers. Each of the several different non-monetary practices provided for the Settlement Agreement carry substantial value to the Settlement Class; collectively, they represent very significant value. *See, e.g.*, *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 517 (E.D. Pa. 2007) (noting value of business practice changes to class members, which augured in favor of class settlement).

The reasonableness of the Settlement must also be viewed against the complexity, expense, and duration of litigation, the stage of the proceedings, and the likelihood of success at trial. *See*,

*e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[2] Each of these considerations weighs in favor of approval.

Although Settlement Class Members' claims may vary in value, the continued litigation of this matter will require (and has already required) substantial resources. Stanoch Decl. ¶ 10. Continued litigation of this matter would necessitate further discovery, including depositions and the extraction, production, and analysis of various data from Highmark. *Id.* This does not include any third-party discovery that could be needed. *Id.* The parties have not yet briefed class certification, which likely would require expert disclosures and depositions, and motions for summary judgment have yet been filed. *Id.* ¶ 11. All of these matters would require significant time and expense, and while Plaintiff and its counsel remain committed to Plaintiff's claims, they are also pragmatic that there is no guarantee of success and that substantial obstacles exist at the summary judgment, class certification, and trial phases as more fully discussed below. *Id.* ¶ 12.

Also, the Settlement was reached at a critical moment: after receipt of vital information from Highmark, but before pivotal procedural and merits junctures after which the difficulty and expense of litigating Plaintiff's claims would have increased. This enabled Class Counsel to view with confidence the strengths and weaknesses of Plaintiff's claims and Highmark's defenses. *See id.* Plaintiff also faces the prospect of being foreclosed from some or any recovery as a result of summary judgment or other motions practice, or at trial. *See id.* ¶¶ 11-14.

## V. <u>THE SETTLEMENT SATISFIES RULE 23(A) AND 23(B)</u>

To approve a class settlement, a district court must determine that the requirements of Federal Rule of Civil Procedure 23(a) and (b) are met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). "The requirements of Rule 23(a) and (b) are designed to insure that

[2] As this motion only requests preliminary approval, not all of the *Girsh* factors are pertinent. Plaintiff reserves the right to present additional argument about the *Girsh* factors as appropriate.

a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives." *Id.* (internal quotations and citation omitted). Here, the Settlement plainly satisfies Rules 23(a) and (b), and should be approved consistent with the "overriding interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

### A. The Settlement Satisfies Rule 23(a)

"Rule 23(a) lays out four threshold requirements for certification of a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In re NFL Players Concussion Injury Litig.*, No. 15-2206, *et seq.*, 2016 U.S. App. LEXIS 6908, at *22 (3d Cir. Apr. 18, 2016); *see* Fed. R. Civ. P. 23(a). The Settlement satisfies each of these requirements.

#### 1. The Class Is Numerous

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Although no magic number exists, courts typically find the numerosity requirement to be satisfied if there are more than 40 class members. *In re NFL*, 2016 U.S. App. LEXIS 6908, at *22. The settlement easily exceeds this threshold. According to Highmark's records, there are more than 3,000 settlement class members.

#### 2. Common Questions of Fact and Law Exist

Rule 23(a)'s commonality requirement also is satisfied here. "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re NFL*, 2016 U.S. App. LEXIS at *22 (internal quotations and citation omitted). Thus, commonality is "easily met" in most instances. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Such is the case here. Plaintiff's and other Settlement Class Members' claims stem from a common course of conduct. For instance, the across-the-board reimbursement rate cut; the effect of the "all products" clause; and the impact of

Highmark's other challenged conduct was all aimed at Settlement Class Members as a whole. Similarly, Highmark's defenses largely would be common to all Settlement Class Members.

**3. Plaintiff's Claims Are Typical**

The typicality requirement aims to assure that the interests of named class representatives align with the interests of the class. *See In re NFL*, 2016 U.S. App. LEXIS, at *25. The Third Circuit has "set a low threshold for typicality." *Id.* (internal quotations and citation omitted). To this end, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (internal quotations and citation omitted). The proposed class representative's claims are identical to those of the Settlement Class. Plaintiff alleges the same type of injury arising out of the same conduct or circumstances to which other Settlement Class Members were exposed. Plaintiff and Settlement Class Members were all subject to the same reimbursement rate reduction for Highmark's Affordable Care Act health exchange products in 2016, 2017, and 2018. The "all products" clause is in each Settlement Class Member's agreement with Highmark. Thus, Plaintiff meets the typicality requirement.

**4. The Adequacy Requirement Is Met**

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement focuses on whether the representatives have any conflicts of interest with the interests of the class, and whether class counsel is capable of representing the class. *See Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

The proposed class representative's interests are coextensive with those of the Settlement Class. P Plaintiff and the Settlement Class have an equally great interest in the relief offered by the Settlement, and there is no divergence between Plaintiff's interests and those of the Settlement

Class. *See* Stanoch Decl. ¶ 16. As noted above, the proposed class representative and other Settlement Class Members' claims arise from the same conduct and turn on the same alleged conduct, and the proposed class representative seeks remedies equally applicable and beneficial to himself and all other Settlement Class Members. Further, the proposed class representative is represented by qualified Class Counsel with extensive pertinent experience and expertise. *Id.* ¶ 18.

**B. The Settlement Satisfies Rule 23(b)(3)**

Pertinent to the settlement's proposed monetary relief, Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.[3] Predominance focuses on the cohesiveness of the proposed class. *In re NFL*, 2016 U.S. App. LEXIS 6908, at *42. Courts are more inclined to find the predominance test met in the settlement context. *Sullivan*, 667 F.3d at 304 n.29.

Plaintiff satisfies the predominance requirement because liability questions common to the Settlement Class substantially outweigh any possible individual issues. The claims of the proposed class representative and the Settlement Class are based on the same legal theories and the same conduct. Further, resolution of the claims of Settlement Class Members through the settlement of a class action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the relatively small individual amounts at issue.

## VI. THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED

For due process purposes, "notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Glaberson*, 2014 U.S. Dist. LEXIS 172040, at *18;

[3] Potential manageability concerns are not pertinent here because this is a proposed settlement class. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303-304 (3d Cir. 2011) (en banc).

*see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice should be the best practicable under the circumstances. *See Eisen*, 417 U.S. at 173.

The proposed Class Notice plan satisfies due process. The Class Notice will be sent via email to Settlement Class Members based on Highmark's provider records. *See* Agreement ¶¶ 4.2.3, 4.2.4. Any Settlement Class Member for whom Highmark does not have valid email address will receive the Class Notice via first-class U.S mail, postage prepaid, based on Highmark's records or, absent that, an address location search initiated by the administrator. *Id.* Because Highmark needs email or mailing address information to process independent providers' reimbursement claims, that Highmark will have contact information for all or virtually all Settlement Class Members. A settlement website will provide notice by publication. *Id.* ¶ 4.2.5.

The Class Notice will also inform Settlement Class Members about their options for opting-out of or objecting to the Settlement, the time and location of the Fairness Hearing, the pertinent terms of the Settlement, and how to obtain additional information. The language of the proposed Notice is plain and easy to understand and provides neutral and objective information about the nature of the Settlement. *See* Ex. C. Accordingly, the proposed plan to disseminate Class Notice satisfies due process requirements. *See, e.g.*, *Hanlon v. Palace Enmt. Holdings*, LLC, Civ. A. No. 11-987, 2012 U.S. Dist. LEXIS 364, at *17 (W.D. Pa. Jan. 3, 2012) (email notice based on defense records "provides a direct avenue to the persons most likely to be potential class members.").

## VII. <u>THE PROPOSED SCHEDULE OF EVENTS</u>

The proposed schedule of events depends on the date this Court on which may enter a Preliminary Approval Order. If a Preliminary Approval Order is entered on November 22, 2019 (for sake of illustration), the deadlines would be:

| Event | Deadline |
|---|---|
| Deadline for Commencement of Class Notice | December 20, 2019 |
| Deadline to Submit Opt-Out Requests | January 19, 2020 |
| Deadline for Filing of Objections to Settlement | January 29, 2020 |
| Deadline to File Motion for Attorneys' Fees, Costs, and Service Award | February 18, 2020 |
| Deadline to Submit Objections to Motion for Attorneys' Fees, Costs, and Service Award | February 25, 2020 |
| Earliest Date for Fairness Hearing | February 28, 2020 |

## VIII. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court preliminarily approve the class action settlement, conditionally certify the Settlement Class, approve the proposed notice plan, and schedule a fairness hearing.

Dated: November 11, 2019

Respectfully submitted,

**GOLOMB & HONIK, P.C.**

By: /s/ *Kenneth J. Grunfeld*
Richard M. Golomb (Pa. I.D. #42845) (*admission pending*)
Ruben Honik (Pa. I.D. #33109) (*admission pending*)
Kenneth J. Grunfeld (Pa. I.D. #84121)
David J. Stanoch (Pa. I.D. #91342) (*admission pending*)
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
rhonik@golombhonik.com
kgrunfeld@golombhonik.com
dstanoch@golombhonik.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system (CM/ECF).

Dated: November 11, 2019

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
*Counsel for Plaintiff*