**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PRESQUE ISLE COLON AND RECTAL SURGERY, on Behalf of Itself and All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    vs.<br><br>HIGHMARK HEALTH,<br><br>-and-<br><br>HIGHMARK INC. f/k/a HIGHMARK HEALTH SERVICES,<br><br>-and-<br><br>HIGHMARK CHOICE COMPANY f/k/a KEYSTONE HEALTH PLAN WEST, INC.,<br><br>             Defendants. | Civil Action No.:  1:17-cv-00122-BR |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    <u>INTRODUCTION</u>

Plaintiff Presque Isle Colon and Rectal Surgery, by and through undersigned counsel, respectively moves for Final Approval of the proposed Settlement Agreement (ECF 58-1) ("the "Settlement" or "Agreement"), which will resolve Plaintiff's and Settlement Class Members' claims in the above-captioned action (the "Action").  The Court has preliminarily approved the Settlement, and approved the parties' proposed class notice program. *See* ECF 59.  Class Notice has been disseminated to the Settlement Class as directed by the Court.  An overwhelming number of class members joined the Settlement (only six opted out).  No objections were filed to the Settlement.  Accordingly, by this motion and incorporated memorandum in support, Plaintiff

respectfully requests that the Court conduct a final review of the settlement, and approve the settlement as fair, adequate, and reasonable.

## II.    BACKGROUND

The following largely tracks the Background set forth in Plaintiffs' unopposed motion for preliminary approval; it is reiterated again here merely for the sake of completeness.

### A.    Case Overview

Per the Amended Complaint, Plaintiff Presque Isle Colon and Rectal Surgery provides outpatient physician services (the sub-specialty of outpatient colorectal physician services) in the Erie County Metropolitan Statistical Area ("Erie County MSA").  Am. Compl. ¶ 14.1.[1]  The Amended Complaint also alleged the following facts. Highmark is one of the largest health insurers in the Commonwealth of Pennsylvania, with more than 4 million covered lives. See Am. Compl. ¶¶ 2, 42.   Highmark is the dominant health insurer in the Erie County MSA and Western Pennsylvania (as Highmark defines this area).  Id. ¶ 2.  Highmark also controls commensurate shares of reimbursements to independent physicians in the Erie County MSA and Western Pennsylvania.  Id.  Also, Highmark now provides outpatient services itself in these same markets. Id. ¶ 4.  Highmark has acquired St. Vincent Hospital in the Erie County MSA, and other healthcare facilities throughout Western Pennsylvania.  Id.   Thus, Highmark directly competes with independent providers for the provision of outpatient physician services.  Id.

The Amended Complaint alleged that Highmark engaged in anticompetitive conduct aimed at independent physicians by leveraging its position as the largest health insurer and buyer of outpatient physician services.  Id. ¶¶ 5-8, 11-12, 44-47, 58.  Among the anticompetitive conduct alleged was that (i) Highmark has predatorily depressed its reimbursement rates for outpatient

---

[1] This Case Overview section describes factual allegations in the Amended Complaint. Highmark does not admit these allegations for purposes of this motion or otherwise.

physician services rendered by independent physicians in the Erie County MSA and Western Pennsylvania, including rates below cost and across-the-board reimbursement rate reductions under Highmark's Affordable Care Act exchange products; (ii) audits to clawback money Highmark had paid three or more years ago; (iii) erecting administrative impediments to independent physicians' efficiency, and (iv) steering patients away from independent providers. *Id.* ¶¶ 11-12, 47, 49-50, 52-53.  Independent providers could not avoid Highmark's conduct as an "all products" clause in Highmark's provider agreements requires independent providers to accept all of Highmark's health insurance plans and rates, or none at all.  *Id.* ¶¶ 59-62.

### B.    Settlement Negotiations

In August 2017, the parties jointly engaged an experienced mediator and approved ADR Neutral of this District, Mr. E.J. Strassburger. *See* Decl. of David J. Stanoch, Esq. ("Stanoch Decl.") ¶ 4 (Ex. A hereto).  The mediation process was non-collusive and conducted at arms' length between the parties with divergent views as to the risks of litigation. Highmark supplied Plaintiff's counsel with certain information pertinent to the case. The parties also provided Mr. Strassburger with case materials and information.  *Id.* ¶ 5.  The parties also had multiple joint and *ex parte* telephone conversations with Mr. Strassburger.  *Id.*  An all-day, in-person mediation session before Mr. Strassburger took place on September 26, 2017.  *Id.* ¶ 6.  This in-person mediation session, and follow-up conversations between the parties or Mr. Strassburger, informed the parties' understanding of their respective positions, but did not result in a settlement at that time.  *Id.* ¶ 6.

Following the Court's ruling on Highmark's motion to dismiss the Amended Complaint, the parties resumed direct mediation discussions between themselves. *Id.* ¶ 7. After much back and forth, and following the review of further information supplied by Highmark, the parties were able to reach a settlement in principle on September 19, 2019. *Id.* ¶ 7. The parties promptly informed the Court. This Court granted a stay so the parties could finalize the settlement papers. The parties executed the Settlement Agreement on October 31, 2019, subject to Preliminary Approval and Final Approval as required by Federal Rule of Civil Procedure 23.

## III.    SUMMARY OF PROPOSED SETTLEMENT TERMS

### A.    The Settlement Class

The Settlement Class is comprised of all independent physicians or independent physician practices in Highmark's 29-county Western Pennsylvania service area through December 31, 2018. *See* Agreement ¶ 1.25. The parties estimate there are more than 3,000 class members.

### B.    Monetary Relief

The Settlement Agreement provides that Highmark will create a non-revertible settlement fund of $1,725,000. *See* Agreement ¶¶ 1.26, 7.1. From this amount, each Settlement Class Member will be entitled to receive a settlement payment reflecting their pro rata share based on a reasonable estimate of total reimbursements under Highmark's Affordable Care Act exchange products for calendar years through December 31, 2018, as adjusted for valid opt-outs. *Id.* ¶ 7.1.2. Settlement Class Members are automatically considered participants and automatically will receive a settlement payment unless they opt-out or object. *Id.* ¶ 7.1.4. This procedure greatly reduces the administrative burden to Settlement Class Members who wish to participate.

### C.    Non-Monetary Relief

In addition to the monetary relief described above, the Settlement Agreement provides that Highmark, for a three-year period running from the end of the calendar year in which the Court

enters a Final Approval Order, will: (i) make fee schedules for commonly used procedures available; (ii) provide 90 days' notice of any changes to Highmark's contracts, policies, or procedures; (iii) institute policies or procedures to ensure that Highmark employees or agents do not knowingly provide misinformation to consumers/patients about independent providers; (iv) use a two-year look-back period for overpayment recoveries; (v) not make more than one across-the-board fee schedule reduction per year as to services provided to patients covered under Highmark products (as further delineated in the Settlement Agreement); (vi) provide, in 2020, a one-time opt out of current products that utilize a reduced fee schedule and the ability after 2020 to not participate in subsequent newly introduced products that utilize a reduced fee schedule (as further delineated in the Settlement Agreement); and (vii) continue to offer processes that enable a provider to bring reimbursement concerns to the attention of a responsible representative. *See* Settlement Agreement ¶ 8. Defendants will also provide a direct point of contact on rate inquiries, and Defendants will consider concerns about below cost rates in good faith. *Id.*

### D.    Class Release

As consideration for the monetary relief under the Settlement Agreement, Highmark will receive a Release from each Settlement Class Member as more specifically delineated in the Settlement Agreement with respect to any claim that was alleged or could have been alleged in the Amended Complaint, relating to the conduct alleged therein. *See* Agreement ¶ 1.19.

### E.    Notice and Settlement Administration

Highmark will pay up to $50,000 for notice and settlement administration costs. *See* Agreement ¶ 9.2. This is an added benefit to the class as this amount will be paid separately from the monetary relief discussed above. *Id.* RSM US LLP will be the notice and claims administrator for the Settlement. The Class Notice is consistent with others RSM US LLP has administrated in

the past, so as to provide the best notice practicable, tailored to reach members of the Settlement Class and to reasonably apprise them of their rights under the Settlement Agreement.

The Class Notice will be sent via email to all Settlement Class Members, based on Highmark's records. *Id.* ¶ 4.2.3. In the event an undeliverable email, notice shall be delivered via first-class U.S. mail, postage pre-paid. *Id.* ¶ 4.2.4. RSM US LLP will initiate an address search for any Class Member for whom Highmark does not have a mailing address, or if initial mail notice is returned as undeliverable. *Id.* Additionally, RSM US LLP will create and maintain a settlement website containing pertinent information for Settlement Class Members. *Id.* ¶ 4.2.5.

Requests to opt-out of the Settlement are to be sent to the Settlement Administrator within the prescribed timeline. *Id.* ¶ 5.1.2. Objections must be filed with the Court, with copies of the objections sent to the parties' counsel. *Id.* ¶ 5.4. The deadlines for objections, requests for exclusion, and claims are all before the contemplated Final Fairness Hearing.

### F. Service Award, Attorneys' Fees, and Costs

Highmark will not oppose Class Counsel's request for a service award of up to $10,000 for Plaintiff's time and effort in this matter. *See* Settlement ¶ 7.1.1. Highmark also will not oppose Class Counsel's request for attorneys' fees of up to 30% of the settlement fund, plus costs. *Id.*

## IV. PRELIMINARY CLASS CERTIFICATION AND NOTICE

### A. Class Certification

On November 12, 2019, the Court certified for settlement purposes the proposed class, finding that the prerequisites for a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been met. ECF 59. No substantive change in fact or law warrants reconsideration of that order. *See* Ex. A ¶ 20. For purposes of settlement, Highmark does not oppose class certification. Plaintiff respectfully requests that the Court finally approve the

proposed Settlement Class and enter the Final Order and Final Judgment attached hereto as Exhibits C and D.

### B. Class Notice

The parties selected and the Court approved RSM US LLP to disseminate notice and handle claims administration. *See supra* Part III.E; ECF 59 at ¶ 11. After preliminary approval, RSM US LLP timely implemented the notice plan. *See* Decl. of RSM US LLP (Ex. B). Aside from activating the settlement website, RSM sent direct notice to 3,811 Settlement Class Members. *See* Ex. B ¶¶ 3-4. Of those, 3,779 were successful, for a 99.2% successful delivery rate. *Id.* ¶ 8.

Of the 3,779 Settlement Class Members who received notice, only six opted out of the Settlement. *Id.* ¶ 9. No objections have been filed to the Settlement.

### C. Class Representative's Service Award, and Class Counsel's Attorneys' Fees and Costs

Plaintiff has simultaneously filed herewith a separate motion for a class representative service award, attorneys' fees, and costs consistent with the Settlement.

## V.    THE COURT SHOULD GRANT FINAL APPROVAL

### A. Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure provides for judicial approval of the compromise of claims brought on a class basis if the proposed class action settlement is "fair, reasonable, and adequate." Approval of class action settlements is committed to the sound discretion of the district court. *See* Fed. R. Civ. P. 23(e). In exercising its discretion, a district court should be mindful of the strong judicial policy favoring settlements. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

A district court's evaluation of a proposed class action settlement focuses on whether the settlement is fair, adequate, and reasonable. *See, e.g.*, *In re Gen. Motors. Corp. Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Glaberson v. Comcast Corp.*, Civ. A. No. 03-6604, 2014 WL

7008539, at *4 (E.D. Pa. Dec. 12, 2014); *see also Manual for Complex Litigation (Fourth)* § 21.61-21.62.  Additionally, a settlement enjoys an "initial presumption of fairness" when, *inter alia*, it was negotiated at arm's length by experienced counsel.  *See In re Warfarin*, 391 F.3d at 535.  The Settlement is presumptively fair, and satisfies the criteria for final approval.

### B.    The Settlement – the Result of Informed, Arm's Length Negotiations Between Experienced Counsel – Is Presumptively Fair

The Third Circuit has "directed a district court to apply an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("There is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval.").  The settlement here satisfies each of these requirements.

First, the parties certainly engaged in arm's length negotiations.  *See, e.g.*, Ex. A ¶¶ 4-9. The parties engaged the services of an experienced mediator, Mr. Jonathan Strassburger, with whom the parties had an in-person conference, as well as multiple joint or *ex parte* telephonic conferences.  *Id.* ¶¶ 4-7.  The parties also provided Mr. Strassburger with case materials and information.  *Id.*  The parties' all-day, in-person mediation session occurred after Highmark had provided information about the fees at issue and the scope and nature of the putative class. *Id.* ¶ 6. Although the parties' discussions with Mr. Strassburger did not culminate in an agreement in principle at that time, it provided the baseline for when parties subsequently resumed settlement discussions directly.  *Id.* ¶¶ 7-8.  Between the information provided by Highmark and Mr. Strassburger's initial assistance, the parties and their counsel had an informed view of the strengths

and weaknesses of their respective positions, the risks of continued litigation, and an appreciation for the substantial value this settlement delivers to the Settlement Class when evaluated in this context.[2] *See id.* ¶ 9.

Thus, the parties and their counsel had an informed view of the strengths and weaknesses of their respective positions, the risks of continued litigation, and an appreciation for the remarkable value this settlement delivers to the Settlement Class when evaluated in this context. *See id.* ¶¶ 9-14. The informed, non-collusive negotiations strongly militate in favor of final approval. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, at *15 (E.D. Pa. June 30, 2016); *see also Wallace v. Powell*, 301 F.R.D. 144, 161 (M.D. Pa. 2014) ("When the settlement results from arm's-length negotiations, the court will 'afford[ ] considerable weight to the views of experienced counsel regarding the merits of the settlement.'") (citation omitted); *In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013) ("On the other hand, because a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of a settlement.").

Moreover, both sides' counsel are qualified and competent class actions litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Plaintiff's Class Counsel has successfully handled national,

---

[2] That the parties were assisted by an experienced mediator over multiple mediation sessions evidences the Settlement's fairness and non-collusive nature. *See, e.g.*, *Mayer v. Driver Solutions, Inc.*, Civ. A. No. 10-cv-1939, 2012 WL 453234, at *2 (E.D. Pa. Feb. 13, 2012) ("The Settlement Agreement was reached in part through the assistance of an experienced mediator…which further reinforces that it is non-collusive."); *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

regional, and statewide class actions, as well as other complex mass or multi-party actions, throughout the United States in both federal and state courts.  *See* Ex. A ¶ 19.  All of this weighs in favor of final approval.  *See, e.g.*, *Hunter v. City of Phila.*, Civ. A. No. 98-4598, 1999 WL 374170, at *2 (E.D. Pa. June 9, 1999) ("significant weight should be attributed the belief of experienced counsel that settlement is in the best interest of the class") (internal quotations omitted); *see also Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 159 (E.D. Pa. 2016) ("Plaintiffs also note that class counsel, who is very experienced in FDCPA litigation, endorses this settlement as favorable to the class . . . [t]he opinion of experienced class counsel that settlement is in the class's best interest is entitled to 'significant weight'") (citations omitted). Finally, out of a class of thousands of Settlement Class members, only six opted out and none objected.  This strongly suggests the settlement is fair and reasonable.

### C.    The Settlement is Fair, Adequate, and Reasonable

The Third Circuit has identified nine factors that bear on the fairness, reasonableness, and adequacy of the settlement agreement:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  Each factor weighs in favor of final approval of the Settlement.

### 1.    The complexity and duration of the litigation

This factor is "intended to capture the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (internal quotations and citation omitted).

Continued litigation of this Action would be lengthy, complex, and costly. Were this case to be litigated further, the parties would conduct complex discovery. The parties have not yet briefed class certification, which likely would require expert disclosures and depositions, and summary judgment motions have not yet been filed. Ex. A ¶¶ 10-16. All of these matters would require significant time and expense, and while Plaintiff and Plaintiff's Class Counsel remain committed to their claims, they are also aware that there is no guarantee of success and that substantial obstacles exist at the summary judgment, class certification, and trial phases. *Id.* Further, the non-prevailing party would likely appeal an adverse judgment, which would further lengthen matters. *Id.* ¶ 17. The settlement, on the other hand, "provides substantial and immediate benefits for the Class, undiminished by further expenses and without the risk and uncertainty of continued litigation." *Chemi v. Champion Mortg.*, No. 2:05-cv-1238, 2009 WL 1470429, at *3 (D.N.J. May 26, 1999); *see, e.g.*, *Pichler v. UNITE*, 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011).

### 2. The reaction of the Class

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *In re Gen. Motors*, 55 F.3d at 812. A largely positive reaction from the class is persuasive evidence of the fairness and adequacy of the Settlement. *Chemi*, 2009 WL 1470429, at *4. As noted above, only six Settlement Class Members opted out, and none objected. This factor strongly favors approval. *See, e.g.*, *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) ("The second factor, reaction of the class, also favors approval of the settlement. Out of over 37,000 potential class members, only three have formally objected. A low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement."); *Carroll v. Stettler*, Civ. A.

No. 10-2262, 2011 WL 5008361, at *2, *4 (E.D. Pa. Oct. 19, 2011) (granting final approval of settlement where 2,627 class members received direct-mail notice and only one class member objected); *Yaeger v. Subaru of Am., Inc.,* No. 1:14-cv-4490, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) (28 objectors out of 665,730 notice receipts showed "strong overall acceptance"); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (10% objection rate indicates class favors settlement).

### 3.    The stage of the proceedings

The third *Girsh* factor considers whether a settlement was the result of "informed negotiations." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998).  As discussed *supra*, the settlement was not negotiated and consummated until after the parties had engaged in substantial briefing of and a hearing on Chase's immunity defenses (among others) and had analyzed pertinent information, and the parties were assisted by a neutral mediator.  Given such, this factor supports final approval of the settlement.  *See, e.g.*, *In re Processed Egg Prods.*, 2016 WL 3584632, at *4, at *15.

### 4.    The risks of continued litigation

The fourth (risks of establishing liability), fifth (risks of establishing damages), and sixth (risks of maintaining a class action) *Girsh* factors collectively balance "the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement."  *See Warfarin*, 391 F.3d at 537 (internal quotations and citation omitted).

The settlement was reached before pivotal procedural and merits junctures.  Nevertheless, Plaintiff's Class Counsel was able to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and Chase's defenses, based on prior motion practice and pre-mediation exchanges of information.  *See* Ex. A ¶¶ 3, 9.  Plaintiff also faces the very real prospect of being foreclosed from some or any recovery at all as a result of summary judgment or other motions

practice. *See, e.g.*, *In re Processed Egg Prods.*, 2016 WL 3584632, at *15 (finding the four, fifth, and sixth *Girsh* factors favored final approval where court had yet to decide summary judgment or class certification motions).

Thus, these factors favor final approval, as it is far from clear whether the Settlement Class would benefit from further litigation; indeed, substantial merits and procedural hurdles remain, each of which would jeopardize the immediate benefits of the settlement. *See, e.g.*, *Pichler*, 775 F. Supp. 2d at 760; *see also Pro v. Hertz Equip. Rental Corp.*, Civ. A. No. 06-3830, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) ("The risks of litigation in this matter include the risk of losing at trial or reversal on appeal. The Settlement Agreement provides substantial monetary and injunctive benefits without the inherent risk of being unable to establish liability during litigation. Accordingly, this factor also weighs in favor of approval.").

5.    The ability of the defendant to withstand a greater judgment

This factor considers "whether the defendant[] could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240. At worst, this factor neither favors nor disfavors settlement in light of the balance of the other factors favoring approval. *See, e.g.*, *In re Processed Egg Prods.*, 2016 WL 3584632, *16 ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement."); *Warfarin*, 391 F.3d at 537-38 (noting "[h]ere, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement" and affirming settlement).

6.    The range of reasonableness of the settlement

- 13 -

The eighth and ninth *Girsh* factors – the range of reasonableness of the settlement in light of the best recovery (factor eight), and in light of all the attendant risks of litigation (factor nine) – are interrelated, and examine "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. Because settlements reflect a compromise, courts should rely on the judgment of experienced counsel who negotiated the settlement, and should resist the temptation to rewrite the settlement "demanding too large a settlement." *Esslinger v. HSBC Bank Nevada, N.A.*, Civ. A. No. 10-3213, 2012 WL 5866074, at *10 (E.D. Pa. Nov. 2012). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003) (internal quotations and citation omitted).

There is no serious question that the Settlement represents a significant transfer of value to the Settlement Class. Settlement Class Members are receiving back substantial pro rata portions of the reduced reimbursements they experienced for Highmark's ACA products, and Highmark has committed to a broad slate of significant, non-monetary relief.

## VIII.  CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant final approval of this settlement and enter judgment accordingly.

Dated:  February 14, 2020                    Respectfully submitted,

                                             **GOLOMB & HONIK, P.C.**

                                             By: /s/ *Kenneth J. Grunfeld*
                                             Richard M. Golomb (Pa. I.D. #42845) (*admission pending*)
                                             Ruben Honik (Pa. I.D. #33109) (*admission pending*)

Kenneth J. Grunfeld (Pa. I.D. #84121)
David J. Stanoch (Pa. I.D. #91342) (*admission pending*)

1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone:  (215) 985-9177
Facsimile:  (215) 985-4169
rgolomb@golombhonik.com
rhonik@golombhonik.com
kgrunfeld@golombhonik.com
dstanoch@golombhonik.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system (CM/ECF).

Dated:  February 14, 2020

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
*Counsel for Plaintiff*
